# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 2:11CR00002-001 |
| v. ) | **OPINION** |
| ) | |
| **PERRY ROGER CARTER,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; John Thadieu Harris III, St. Paul, Virginia, for Defendant.*

The defendant, proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging, among other things, that his attorney failed to file a notice of appeal after the defendant asked him to do so. After conducting an evidentiary hearing on this claim and reviewing the record as to the defendant's remaining claims, I conclude that he is not entitled to relief under § 2255.

I

On December 19, 2011, Perry Roger Carter pleaded guilty, pursuant to a written Plea Agreement, to conspiracy to distribute controlled substances, possession of a firearm with an obliterated serial number, and possession of a

short-barreled shotgun. Under the terms of the agreement, Carter stipulated that he should be sentenced based on specific drug amounts resulting in a Base Offense Level of 26 under U.S. Sentencing Guidelines Manual ("USSG") § 2D1.1, with a two-level enhancement for possessing a dangerous weapon. The Plea Agreement also included provisions waiving the right to appeal and the right to collaterally attack the conviction or sentence.[1] In exchange, the government agreed to recommend a sentence within the applicable guideline range, to recommend a two-level reduction for acceptance of responsibility, and not to charge Carter with

---

[1] Carter's Plea Agreement waiver of appeal included the following language:

> Knowing that I have a right of direct appeal of my sentence under 18 U.S.C. § 3742(a) and the grounds listed therein, I expressly waive the right to appeal my sentence on those grounds or on any ground. In addition, I hereby waive my right of appeal as to any and all other issues in this matter and agree I will not file a notice of appeal. I am knowingly and voluntarily waiving any right to appeal. By signing this agreement, I am explicitly and irrevocably directing my attorney not to file a notice of appeal. ***Notwithstanding any other language to the contrary, I am not waiving my right to appeal or to have my attorney file a notice of appeal, as to any issue which cannot be waived, by law. . . .***

(Plea Agreement 9, ECF No. 134.) The collateral attack waiver was similarly broad in scope:

> I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel, and agree I will not file any document which seeks to disturb any such order, unless such filing is based on ineffective assistance of counsel.

(*Id.*)

possession of a firearm in furtherance of a drug trafficking crime, which would have carried a five-year mandatory consecutive sentence.

Before accepting Carter's guilty plea, I questioned him to determine whether he understood the terms of the Plea Agreement and was entering a voluntary guilty plea. Carter stated that he was 54 years old, that he had an eighth-grade education, and could "read fair," but did not spell well. (Guilty Plea Tr. 3-4, ECF No. 236.) He stated that although he was under a doctor's care for anxiety and was taking prescription medication for that condition and for back pain, the medicines did not affect his ability to understand the proceedings. He denied that he was under the influence of any other medication, drugs, or alcohol.

Carter affirmed that he had had an adequate opportunity to read and discuss the Plea Agreement with counsel before he initialed each page of the agreement and signed it, and stated that he was satisfied with counsel's representation. The prosecutor reviewed the terms of the agreement, the charges to which Carter was pleading guilty, the maximum sentences for each count, and the guidelines applications to which Carter had agreed. I expressly questioned whether Carter understood that, under the agreement, he was waiving his right to appeal and his right to collaterally attack the judgment, and he said, "Yes." (*Id.* 18.) He denied that anyone had made any promise to him that was not contained in the Plea Agreement or that anyone had threatened him or tried to force him to plead guilty.

Carter assured me that he understood the elements the government would have to prove in order to convict him at trial, the consequences of his plea, the advisory nature of the sentencing guidelines, and the fact that his sentence might be more severe than any estimate that his attorney may have given him. Carter also did not dispute the government's evidence as summarized by the prosecutor. I found that Carter's guilty plea was knowing and voluntary and was supported by an independent basis of fact. Therefore, I adjudged him guilty of the offenses.

After preparation of a Presentence Investigation Report ("PSR"), I conducted a three-hour sentencing hearing on June 19, 2012. Defense counsel objected to the PSR's finding that Carter should receive an enhanced sentence for knowingly selling drugs to a minor and for playing a leadership role in the conspiracy. I sustained Carter's objection on the first issue, but denied it as to the second. I adopted the PSR's determination that Carter should receive a Base Offense Level of 26, increased by two levels for possessing a firearm and by four levels for a leadership role, then reduced by three levels for acceptance of responsibility, for a Total Offense Level of 29. This total, with Carter's Criminal History Category of III, resulted in an advisory custody range of 108 to 135 months. I sentenced Carter to 120 months in prison. No appeal was noted.

Carter thereafter filed this timely § 2255 action, which he later amended, alleging eight grounds for relief: (1) lack of jurisdiction; (2) ineffective assistance

of counsel in (a) failing to argue sentencing factors; and (b) failing to file an appeal after being asked to do so; (3) inappropriate assignment of the "ringleader enhancement"; (4) improper calculation of criminal history points; (5) improper application of the firearms enhancement; (6) imposing a sentence more severe than warranted; (7) improper application of 21 U.S.C. §§ 841 and 846, which Congress allegedly had no authority to enact; and (8) imposing a sentence in violation of the Sixth Amendment as interpreted in *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

The government filed a Motion to Dismiss, arguing that with the exception of Claim (2)(b), Carter's § 2255 claims should be denied on the record as waived, defaulted, or without merit. Carter responded, making the motion ripe for consideration. The government conceded, however, that an evidentiary hearing was necessary to resolve Carter's claim that his attorney failed to follow his instruction to note an appeal.

I took the Motion to Dismiss under advisement, appointed counsel for Carter, and conducted an evidentiary hearing on April 30, 2014. Carter testified, as did his former attorney. At the close of the hearing, I made findings of fact on the record (Hr'g Tr. 6, ECF No. 254) that Carter had not asked his attorney to note an appeal and that no circumstance in his case indicated that the attorney had a duty to discuss an appeal with Carter after sentence. *See Roe v. Flores-Ortega*, 528 U.S.

470, 477-80 (2000). Based on these findings, I ruled that Carter's Claim 2(b) was without merit and that he was not entitled to a delayed appeal. I advised the parties that I would resolve the remaining issues in Carter's § 2255 motion in a later written ruling.

II

A. WAIVER OF COLLATERAL ATTACK.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether a waiver is intelligent and voluntary requires evaluation of the "adequacy of the plea colloquy," with "reference to the totality of the circumstances." *United States v. Copeland*, 707 F.3d 522, 528 (4th Cir.) (internal quotation marks and citation omitted), *cert. denied,* 134 S. Ct. 126 (2013). "Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid." *Id.* at 528 (internal quotation marks and citation omitted). If the court concludes that the defendant's waiver of collateral-attack rights was knowing and voluntary, the defendant "cannot

470, 477-80 (2000). Based on these findings, I ruled that Carter's Claim 2(b) was without merit and that he was not entitled to a delayed appeal. I advised the parties that I would resolve the remaining issues in Carter's § 2255 motion in a later written ruling.

II

A. WAIVER OF COLLATERAL ATTACK.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether a waiver is intelligent and voluntary requires evaluation of the "adequacy of the plea colloquy," with "reference to the totality of the circumstances." *United States v. Copeland*, 707 F.3d 522, 528 (4th Cir.) (internal quotation marks and citation omitted), *cert. denied,* 134 S. Ct. 126 (2013). "Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid." *Id.* at 528 (internal quotation marks and citation omitted). If the court concludes that the defendant's waiver of collateral-attack rights was knowing and voluntary, the defendant "cannot

challenge his conviction or sentence in a § 2255 motion," unless his claims fall outside the scope of the waiver. *Lemaster*, 403 F.3d at 220 (footnote omitted).

From the record, I find today, as I did at Carter's guilty plea hearing, that he entered a knowing and voluntary guilty plea.[2] He affirmed in court his understanding of the charges, the maximum sentences he faced, and the Plea Agreement terms and consequences. Specifically, in response to my focused questioning, Carter affirmed his understanding that he was waiving his right to bring any claims on collateral attack, other than claims of ineffective assistance of counsel. His claims of jurisdictional defects and court error at sentencing challenge the validity of the criminal judgment and sentence and, therefore, fall squarely within the scope of his waiver of collateral attack rights. Accordingly, I find that under the terms of his Plea Agreement, Carter waived his right to bring Claims (1) and (3) through (8), and I deny his § 2255 motion as to these claims.

B. PROCEDURAL DEFAULT.

Claims regarding trial or sentencing errors that could have been, but were not, raised on direct appeal are barred from review under § 2255, unless the

---

[2] During the evidentiary hearing, Carter testified that he cannot read or write. Although this testimony contradicts Carter's statements during the plea colloquy that he could read and had, in fact, read the Plea Agreement, this factual discrepancy has no bearing on my finding that Carter entered a valid guilty plea pursuant to the agreement. Counsel testified that he knew Carter could not read and, consequently, read the Plea Agreement to him, and I found counsel's testimony to be more credible than Carter's testimony regarding their discussions about the Plea Agreement and sentencing and appeal issues. Moreover, Carter has not raised any § 2255 claim challenging the validity of his guilty plea or his Plea Agreement waiver of collateral attack rights.

defendant shows cause for the default and actual prejudice or demonstrates that he is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Because Carter could have raised Claims (1) and (3) through (8) on appeal, they are procedurally barred from review under § 2255. Because Carter offers no cause for this default and makes no showing that he is actually innocent of the offenses, I will deny his § 2255 motion as to these claims on the ground of procedural default, as an alternative to the waiver ground already discussed.

### C. INEFFECTIVE ASSISTANCE OF COUNSEL.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

In addition, the defendant must show prejudice — by demonstrating a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694. If it is clear that the defendant has not satisfied one prong of the *Strickland* test, the court need not inquire whether he has satisfied the other prong. *Id.* at 697.

As stated, I have already denied relief under § 2255 as to Carter's Claim (2)(b), alleging that counsel was ineffective regarding his right to appeal. Carter's remaining claims of ineffective assistance at sentencing are also without merit.

Carter first alleges that counsel erred when he failed to object to the assignment of criminal history points for a conviction more than ten years old. This argument, however, had no factual support in the record. In this court, Carter pleaded guilty to a conspiracy lasting from January 1, 2005, until April 19, 2011. Therefore, his 1999 sentence of seven months in jail for driving under the influence, imposed in December of 1999, was within ten years of the federal offense conduct, and I properly adopted the PSR's assignment of two criminal history points for this conviction. *See* USSG § 4A1.2(e)(2) (providing that "any prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted"); USSG § 4A1.1(b) ("Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).").[3]

Carter also argues that counsel should have objected to the PSR finding that two criminal history points should be added to Carter's total under USSG § 4A1.1(d). This guideline applies when the defendant committed his federal offense while on probation from a prior offense. Carter contends that he was not

---

[3] Section 4A1.1(a) dictates three criminal history points "for each prior sentence of imprisonment exceeding one year and one month." USSG § 4A1.1(a).

sentenced to probation in state court until *after* his arrest on the federal offense on April 19, 2011, and so could not have committed the federal crime while serving the probation sentence.

I find no support in the record for Carter's argument. Carter did not object to the PSR finding that the Scott County General District Court sentenced Carter on January 25, 2011, to "12 months probation" for conduct committed on October 19, 2010. (PSR ¶ 83.) As stated, Carter pleaded guilty to a conspiracy that ended on April 19, 2011. Because at least three months of the conspiracy period occurred after Scott County sentenced Carter to probation, I properly adopted the PSR and assigned him two criminal history points under § 4A1.1(d).

I cannot find that counsel's failure to bring meritless arguments against Carter's criminal history points was either deficient representation or prejudicial to the outcome at sentencing. Therefore, I hold that this aspect of Carter's Claim (2)(a) fails under both facets of *Strickland*.

Carter next asserts that his counsel was ineffective in failing to argue against an increase in offense level under USSG § 2D1.1(b)(1) for possession of a firearm. Because Carter had stipulated to this enhancement under the terms of the Plea Agreement, the attorney had no viable objection to its application at sentencing. Thus, his failure to raise such an objection did not constitute ineffective counsel under *Strickland*.

Carter next asserts that counsel argued ineffectively against the enhancement for leadership role under USSG § 3B1.1. Again, I find no support in the record for this claim.

Carter contends that counsel should have argued that because coconspirators — the Darnells, father and son — introduced Carter to the drug supplier and recruited more dealers and clients than Carter did, the leadership enhancement should not apply to Carter. As proof that he had little control over anyone in the conspiracy, he asserts that "was unable to even keep his own girlfriend, Angela Hunter, from bringing strangers over to [his] house to sell drugs." (§ 2255 Mot. 12-13, ECF No. 221.)

The sentencing transcript reflects that counsel did raise many of these issues in questioning the witnesses and in his argument to the court. For example, upon cross-examination, counsel elicited testimony from Agent Temm, and later argued, that the Darnells facilitated the transactions between their drug supplier and Carter. The agent also agreed on that cross-examination that of 26 witnesses questioned about the conspiracy, Carter's name came up less than most; that there was no evidence that Carter gave instructions to anyone; and that Carter's involvement did not support calling him a "ringleader." (Sentencing Tr. 83, ECF No. 241.) Counsel argued that Carter should not be designated as a leader, when the coconspirators he supposedly led were selling drugs before he started to do so.

Unfortunately for Carter, other testimony at the lengthy sentencing hearing counteracted counsel's efforts to downplay Carter's involvement. Agent Temm testified that the Darnells' drug transactions involved smaller amounts than Carter's transactions with the same supplier and that they later sold drugs for Carter. The agent also testified that the government had evidence of Carter making drug sales to more than a dozen people and providing others with drugs to sell.

In overruling Carter's objection to the leadership enhancement, I noted that this guideline does not apply only to the kingpin of a conspiracy.[4] (Sentencing Tr. 98, ECF No. 241.) I found that Carter had a strong self interest in minimizing his leadership role and that the evidence supported a finding that "Carter was a leader of this criminal activity" that "involved five or more participants, and was otherwise extensive" so as to qualify him for the four-level enhancement under USSG § 3B1.1. (Sentencing Tr. 99, ECF No. 241.)

Carter has not demonstrated that his attorney's strategic choices regarding the leadership enhancement issue were unreasonable. Moreover, Carter fails to point to any additional fact or argument that counsel could have presented to persuade me to reject application of the enhancement. Thus, I conclude that this aspect of Carter's Claim 2(b) fails under both facets of *Strickand*.

---

[4] Section 3B1.1 authorizes a four-level increase to a defendant's Base Offense Level if the court finds that he was "an organizer or leader of a criminal activity that involved five or more participants."

Finally, Carter faults counsel for failing to make arguments under 18 U.S.C. § 3553(a) and failing to present "humanizing" evidence in favor of a downward departure. (§ 2255 Mot. 10, ECF No. 221.) Carter contends that a ten-year sentence was greater than necessary to punish his conduct because of his age, his poor health and history of mental illness, his strong support from family and friends in the community, his minor role in the conspiracy, and the guidelines' overly harsh treatment of drug offenses.

The transcript reflects that counsel argued for a lighter sentence based on Carter's own drug problems, heightened by the death of his son. In addition, he pointed out the prosecution's request for a leadership role enhancement for Carter, but not for codefendants with alleged greater involvement in the conspiracy. I cannot find that counsel's choice to emphasize these issues was an unreasonable legal tactic. This sentencing equality argument was consistent with counsel's overall sentencing strategy, in which he presented evidence and argument highlighting others' stance in the conspiracy, while downplaying Carter's role. Moreover, the attorney could reasonably assume that the PSR provided sufficient evidence regarding Carter's family and health situation. Thus, I cannot find that he has demonstrated deficient performance under *Strickland*.

In addition, none of the arguments Carter presents in his § 2255 motion persuade me that he is entitled to any less severe sentence than the 120 months I

imposed. He has not demonstrated any circumstance that would persuade me to grant a downward departure or variance from the guideline range, and I remain satisfied that the sentence imposed was appropriate to accomplish the goals set forth in § 3553(a). Accordingly, I conclude that this claim of ineffective assistance also fails under the prejudice prong of *Strickland*.

III

For the stated reasons, I find that the Motion to Dismiss must be granted. Carter's claims of ineffective assistance of counsel at sentencing and appeal are without merit, and his remaining claims are both waived under the terms of his valid Plea Agreement and procedurally barred from habeas review under § 2255.

A separate Final Order will be entered herewith.

DATED: May 16, 2014

/s/ James P. Jones
United States District Judge